THE THOMAS IRON COMPANY

*v.*

THE ALLENTOWN MINING COMPANY AND HENRY BAKER, and others.

1. A, being lessee of a mine adjoining mineral lands of B, sank a shaft on the latter lands without authority, and through it mined a large quantity of the ore in those lands. A, having exhausted his own mine, and being about to abandon it, B, who had then for the first time discovered the trespass, requested permission from A and his lessors to go down the shaft in order to make an inspection, with a view to ascertaining the extent of the injury; which was refused. He then filed his bill for leave to make the inspection, and an injunction requiring A and his lessors to permit the inspection was granted, without notice to any of them. *Held*, that it was properly granted under the circumstances, but that as a general rule it is best to require notice of application for an injunction in such case, in the meantime enjoining so far as may be necessary to preserve the *status quo*.

2. After ceasing to work his mine in the regular way (it being worked out), A proceeded to reduce, for the sake of the ore that was in them, the pillars supporting the roof, thus endangering the falling in of the roof, which would let into A's mine the waters of a swamp on the surface of the ground over that mine, from which those waters would run into and flood B's mine, where A had worked it. On supplemental bill setting up these facts an injunction was granted, and after argument retained till the hearing.

Bill for relief and supplemental bill, answer and affidavits. Motion to dissolve injunctions and dismiss bill.

NOTE.—Where the owner of the surface is distinct from that of a mine, he is entitled to a reasonable support, notwithstanding a denial of all negligence in working such mine. *Harris* v. *Ryding*, 5 *M. & W.* 60; *Humphries* v. *Brogden*, 12 *Q. B.* 739; *Smart* v. *Morton*, 5 *El. & Bl.* 30; *Marvin* v. *Brewster*, 55 *N. Y.* 538. Nor has a defendant, in working a mine, any right to remove the pillars or supports so as to endanger the falling in of the surface. *Blackett* v. *Bradley*, 1 *B. & S.* 940; *Jones* v. *Wagner*, 66 *Pa. St.* 429; *Horner* v. *Watson*, 79 *Pa. St.* 242. It is the right of each of the owners of adjoining mines to work his own in the manner which he deems most convenient and beneficial to himself, although the natural consequence may be that some prejudice

Thomas Iron Co. *v.* Allentown Mining Co. and Henry Baker.

*Mr. J. Vanatta,* for the motion.

*Mr. I. W. Scudder, Mr. A. G. Richey,* and *Mr. J. G. Shipman, contra.*

THE CHANCELLOR.

The original bill was filed to restrain the defendants, the Bakers, lessors, and the Allentown Mining Company, lessees, from preventing the complainants from entering into the mine owned by the former, and leased to and worked by the latter, to inspect the workings so as to ascertain to what extent they had been done upon the mineral property of the complainants. The bill, which is duly verified, states that the Baker mine property and that of the Thomas company adjoin each other, and that before the filing of the bill the Allentown company had, without the authority or knowledge of the complainants, sunk a shaft in their mining operations upon the property of the complainants (as the latter had recently discovered), and had through it mined and taken to their own use from the complainants' property, about 40,000 tons of ore; that they had, when the bill was filed, ceased their mining operations on both properties,

---

will ensue to the owner of the adjoining mine; so long as such prejudice does not arise from the negligent or malicious conduct of his neighbor. *Smith* v. *Kenrick,* 7 *C. B.* 515. That a plaintiff has a right of action against an adjoining land-owner who, by working his mine, has deprived the plaintiff's land of support, and caused a subsidence of the same, see *Richards* v. *Harper,* 1 *L. R.* (*Ex.*) 199. If a subsidence is caused by the combined workings of mines immediately beneath the surface injured, and of others beneath adjoining mines, the plaintiff may recover. *Aspden* v. *Seddon,* 1 *L. R.* (*Ex. Div.*) 496. It was *Held,* that the owner of a mine was liable in trespass for having wrongfully excavated on his neighbor's mine; but not in case, for leaving open an aperture, although a continuing damage resulted therefrom. *Clegg* v. *Dearden,* 12 *Q. B.* 576. In the same case a *query* was raised, whether such trespasser was bound to use means on his own land to prevent water flowing therefrom into that of complainant. But in *Mexborough* v. *Bower,* 7 *Beav.* 127, where a tenant, in violation of his covenant, had worked into a neighboring mine, an injunction, the effect of which was to compel him to close the opening, was allowed. So, case will lie if the result of such trespassing is the removal of a natural barrier of

Thomas Iron Co. *v.* Allentown Mining Co. and Henry Baker.

and were about to leave them altogether, and that they and the Bakers, had refused the complainants permission to go down the shaft and make an inspection, to ascertain what working had been done in the complainants' property. The bill prays an account, but its main object was to obtain the inspection. On the filing of the bill an injunction was issued restraining the defendants from preventing the complainants, their servants or agents, from entering the mine and remaining therein for the purpose of making explorations and surveys to ascertain, as far as might be practicable, the amount of iron ore which had been taken from the mine, (provided that they should not take possession of the mine, nor any part thereof, nor remain therein any longer than might be reasonably necessary for the above mentioned purposes, and that they should do no injury to the property or possession of the defendants, nor interfere with their business,) and also from removing the pillars or supports in the mine, and from doing any other wrong or injury which would hinder or destroy the access to the mine, or hinder or prevent the free exploration and survey thereof for the purposes above mentioned. The inspection was permitted under the injunction.

---

the plaintiff's mine, and its consequent inundation. *Firmstone* v. *Wheeley*, 2 *D. & L.* 203. Ignorance of the location of the dividing line cannot be set up as excuse, justification, or, it seems, even in mitigation. *Maye* v. *Tappan*, 23 *Cal.* 306. Where A dug a well near B's land, which sank in consequence, and it was proved that if a building had not been on B's land, the land would still have sunk, but the damage to B would have been inappreciable, *Held*, that B had no right of action against A. *Smith* v. *Thackerah*, 1 *L. R.* (*C. P.*) 564. See *Brown* v. *Robbins*, 4 *H. & N.* 186. It seems, that a land-owner has no natural right of support from subterranean water. *Popplewell* v. *Hodkinson*, 4 *L. R.* (*Ex. Ch.*) 248. A defendant is liable, if, after constructing a reservoir on his own land, over an abandoned colliery, the plaintiff's mine is thereby flooded. *Fletcher* v. *Rylands*, 1 *L. R.* (*Ex. Ch.*) 265. No liability arises from water flowing naturally from a mine properly worked, into another mine situated on a lower level. *Aliter*, as to water pumped into the upper mine for the purpose of working a deeper seam. *Baird* v. *Williamson*, 15 *C. B.* (*N. S.*) 376; *Horner* v. *Watson*, 79 *Pa. St.* 242. A and B occupied adjoining collieries, and a predecessor of B, but with whom he had no privity, had made holes, called "thyrlings," in a barrier of coal belonging to A, which sepa-

Thomas Iron Co. *v.* Allentown Mining Co. and Henry Baker.

The supplemental bill was filed to prevent the defendants from weakening the pillars and supports of their own mine, or their workings in the complainants' property, to such an extent as to endanger the caving·in of the surface, and so filling in the places worked, and to let in the water from a swamp over their mine, which would flood the complainants' mine property which had been worked by the defendant company.    This bill was duly verified, and on it an injunction was issued, restraining the defendants from removing or weakening any of the pillars or supports of either of the mines, their own or the complainants', so as to endanger the falling of the earth or mine roofs supported thereby.    The defendants have answered the original bill, and now move to dissolve the injunctions and to dismiss the bills.    The injunction to restrain the defendants from preventing an inspection has served the purpose intended, and the motion to dissolve it is based on the ground that it was improvidently granted.    That the case made by the bill warranted an injunction is too clear for dispute.    If, as the bill alleged, the defendant company had entered upon the complainants' property, and there sunk a shaft and mined ore through it, and having ceased their operations, and being about to

rated the two collieries.    B, in working his mine, broke down a seam of his own coal, and the consequence was that the water flowed from B's mine into A's, through the thyrlings.    *Held,* that there was no duty on B to prevent the water from flowing from his mine into A's mine.    *Smith* v. *Kenrick,* 7 *C. B.* 515.    An owner who, in mining, draws the water from and destroys a neighboring spring, is not liable therefor, in the absence of malice or negligence.    *Holdeman* v. *Burckhart,* 45 *Pa. St.* 514.    See, also, *Acton* v. *Blundell,* 12 *M. & W.* 324; *Ballacorkish Co.* v. *Harrison,* 5 *L. R.* (*P. C.*) 49; *Dickinson* v. *Grand Junction Canal Co.,* 19 *E. L. & E.* 513.    For the liability of a defendant who wilfully fills with water a shaft used in common by both parties, see *McKnight* v. *Ratcliff,* 44 *Pa. St.* 156.

In *Dugdale* v. *Robertson,* 3 *K. & J.* 695, the plaintiff being entitled to the support of the surface after a conveyance by him of the mines thereunder, the defendants were ordered to allow plaintiff access at all reasonable times to the mines, for the purpose of making necessary supports.    A view was ordered, in *Stockbridge Iron Co.* v. *Cone Iron Works,* 102 *Mass.* 80, although there was no pretence that the wrongful excavation had been made wilfully; and, in this case, the cost of using the shaft of the plaintiffs, if reasonably although not absolutely necessary,

Thomas Iron Co. *v.* Allentown Mining Co. and Henry Baker.

leave the mine, refused, on application, to permit the complainants to enter the mine for inspection, and the complainants were apprehensive, and had reason to apprehend, that the defendants would destroy the evidence of their operations and so render it impossible for the complainants to obtain compensation or satisfaction in the premises, they were entitled to an injunction, at least to restrain the defendants from destroying the evidence, a thing which they might do under an honest but mistaken claim as to the boundaries of their property. It appears clearly that the defendants refused the complainants permission to make the inspection. On the 10th of June, 1876, the engineer of the latter applied to the mining superintendent of the Allentown Company, at the mine, for permission to enter the mine to make the inspection. The superintendent replied that leave could not be granted without the consent of Mr. Baker, one of the lessors, and referred him to the latter accordingly. Mr. Baker says that on that day two agents or employes of the complainants asked him if he was willing that they should go down into the mine and look at it. He says he replied that they must go to the Allentown Company; that he had nothing to do with it; that they then said they had seen

---

and also the cost of excavations on and under the plaintiffs' land, were allowed; the plaintiffs advancing the money therefor, and being allowed interest. But, in *Bennett* v. *Whitehouse*, 28 *Beav.* 119, where a view was ordered on probable suspicion, the court said that the inspection must be at the complainant's own expense, and on reasonable notice to the defendant. So, where a defendant had built a wall upon the boundary line after excavating plaintiff's land and removing ore through his own mine, the plaintiff, on depositing £500 as security, was allowed to make an opening in such wall for inspection. *Bennet* v. *Griffiths*, 7 *Jur. N. S.* 284. To a bill averring that defendant's mine could not be worked without tapping and letting in a river, thereby flooding the defendant's mine, and through his mine that of the complainant's, a demurrer was overruled, and an injunction granted, although the complainant had worked out the barrier between his own and defendant's mine. *Crompton* v. *Lea,* 19 *L. R.* (*Eq.*) 115. See *Jegon* v. *Vivian,* 6 *L. R.* (*Ch.*) 742. In *Dundas* v. *Muhlenberg,* 35 *Pa. St.* 351, both the lessor and lessee were held liable, the lessor having authorized and contributed to the cost of building a slope, by means of which coal wrongfully mined was reached and removed, a royalty thereon having been paid to the lessor. It seems, that if a tenant be in possession of

6

the superintendent of the Allentown Company, and he would not give them permission unless Mr. Baker gave it; and that he replied to that statement, "You must go to the Allentown Company; they are lessees, and have all to do with it." He says that he further said that he would give no permission, but that if the Allentown Company did so, he would make no objection to it.

These statements from the answer fully corroborate the allegation of the bill, that the defendants refused the complainants permission to make an inspection. Nor is it alleged by the defendants that they were not fully aware of the reason for desiring to make the inspection. It would seem that it ought to be quite a matter of course for the parties to allow an inspection, on application, under such circumstances. After a refusal under the circumstances as stated in the answer itself, it would be the duty of the court to secure to the complainants the inspection, if satisfied of the *bona fides* of their application. But the defendants' counsel insists that the order (for such the injunction was, practically,) for inspection ought not to have been made without giving to the defendants an opportunity to be heard in relation to it; that is, it should not have been made except on notice. In a case like the present, where the application is for the inspection of a worked-out and almost abandoned mine, to ascertain the extent of the workings merely, and it appears that leave has been refused,

the land, the lessor alone may sue for wrongfully removing ores, because it is an injury to the reversion. *Hugunin* v. *McCunniff*, 2 *Col.* 367, 373. Whether the mode of working a mine is the ordinary one, and was reasonable and proper, is a question for the jury. *Smith* v. *Fletcher*, 9 *Ex.* (*Ex. Ch.*) 64.

There has not been entire uniformity in the rules adopted for measuring damages in such cases; thus, in *Hilton* v. *Woods*, 4 *L. R.* (*Eq.*) 432, where the defendant, by mistake, worked the mine of the plaintiff, it was held, that he was to pay only the fair value of the coal, as if he had purchased the mine from the plaintiff. In *Jegon* v. *Vivian*, 6 *L. R.* (*Ch.*) 742, the cost of hewing and raising were allowed the defendant. In the case of mere wrongful taking, without allegation or proof of either mistake or wilfulness, the measure was held to be the cost of raising, but not that of getting or sev-

the granting of the order for inspection is, on the making out of a *prima facie* case entitling the complainant to it, almost a matter of course.  In *Bennett* v. *Whitehouse,* 28 *Beav.* 119, the court (M. R.) said: "Whenever it appears that a person has power to make use of his land to the injury of another, and there is *prima facie* evidence of his doing so, though it is contradicted, still, as the only way of ascertaining the fact is by an inspection, the court always allows it, if it can be done without injury to the defendant." That was a case where the plaintiff and defendant were lessees of adjoining coal mines, and the former, having some reason to suspect that the latter was working from his own mine into the plaintiff's, and taking coal therefrom, applied to him for leave to go down the pits into the defendant's colliery, to inspect the working.  The defendant denied altogether that he was working into the plaintiff's gallery, and refused the permission.  And he denied the trespass by his answer.  The leave to inspect was granted, however.

In *Lewis* v. *Marsh,* 8 *Hare* 97, a lessor of a coal mine filed a bill against his lessee for an account, and to restrain him from working certain parts of the mine, the court (V. C. Wigram) based the order on the ground of necessity.  He says: "I think the case is one in which there is a necessity that the party should be allowed what he asks, in order to prove his case.  That is the meaning of necessity.  A party cannot get his rights without proving what his rights are,

---

ering the coal.  *Llynvi Co.* v. *Brogden,* 11 *L. R.* (*Eq.*) 188; *In re United Merthyr Co.,* 15 *L. R.* (*Eq.*) 46.  And this rule undoubtedly has the weight of authority.  *Morgan* v. *Powell,* 3 *Q. B.* 278; *Martin* v. *Porter,* 5 *M. & W.* 352; *Wild* v. *Holt,* 9 *M. & W.* 672; *Lykens Valley Coal Co.* v. *Dock,* 62 *Pa. St.* 232; *Maye* v. *Tappan,* 23 *Cal.* 306; *Barton Coal Co.* v. *Cox,* 39 *Md.* 1.  In *Dean* v. *Thwaite,* 21 *Beav.* 621, the account was limited to six years; but after proof of the quantity removed, the burden was held to be on the wrong-doer to show that it was not all taken within six years.  The same case holds that the account would not be so limited, if the coal had been abstracted intentionally, and steps had been taken to conceal the fact and to prevent discovery.  For the measure where the damage has been wilfully done, see *McKnight* v. *Ratcliff,* 44 *Pa. St.* 156; *Douty* v. *Bird,* 60 *Pa. St.* 48.—REP.

and it is inherent in the case that the plaintiff should have an opportunity of ascertaining that the defendants do not work more coal than they are entitled to. If there had been a shaft going through the plaintiff's land, there would not be the slightest doubt as to the plaintiff's right to go down and inspect the works." See, also, *Ennor* v. *Barwell*, 1 *D. F. & J.* 529.

If the granting of the order for inspection is a matter of course on a *prima facie* case, notwithstanding the sworn denial of the defendant, it would seem that it might, at the discretion of the court, be made without notice to the defendant. It is undoubtedly, however, the better practice to require notice, enjoining, in the meantime, so far as may be necessary to preserve the *status quo*.

The injunction to restrain the defendants from weakening the supports of their mine to such an extent as to endanger the caving in of the surface, and especially the flooding of the mines with the water of the swamp, was a proper exercise of the power of the court. The bill and the affidavits of verification show reasonable ground of apprehension lest, through the weakening of the supports, the surface should cave in and let the water of the swamp into the defendant's mine, whence it would flow into the mine of the complainants. Were it to do so, it is alleged that it would cause damage to the complainants to the amount of $50,000.

The defendants' mine was, when the bill was filed, worked out, and the lessees, the Allentown Company, were getting ore by means of the reduction of the pillars which had been left for support, and they proposed to continue doing so to the end of their term, which was some months distant. The complainants allege that the defendant company, under their lease, have mined to a great extent upon the complainants' land. The Bakers, as lessors, have had the benefit of the trespass, if such there has been, in the royalty paid them by their lessees. If the defendants have indeed thus trespassed upon and opened the complainants'

land, it is no stretch of authority to prohibit them from such a use of their own property as will inflict damage on that of the complainants. And even if the complainants' mine at the Baker line had been opened by themselves, it would have been the duty of the court to have protected them from this threatened injury, under the circumstances. The maxim, *Sic utere tuo ut alienum non lœdas,* would have furnished sufficient ground for such relief. The defendants have, on the case made by the complainants, opened and worked the mine on the land of the latter in connection with the mine on their own property. If the latter is flooded, the former must be; and the court will not, in such a case, hesitate to restrain the trespasser from an act which will inflict such an injury on the property on which he has trespassed. The affidavits on the part of the defendants do not overthrow the case made by the complainants for the injunction.

The motion to dissolve must be denied, with costs. Nor can the motion to dismiss the bills prevail. It is based on the ground that the complainants have an adequate remedy at law. The original and supplemental bills are both injunction bills. The latter seeks no other relief. The former prays an account, indeed, but it is in fact filed for the purpose of obtaining an inspection and discovery. As to all other relief, the complainants submit themselves to the direction of the court.